# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DEAN HUTCHESON,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant.<br>_____/ | Case No. 1:16-cv-00366-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>**(Doc. 1)** |

On March 16, 2016, Plaintiff Steven Dean Hutcheson ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits. (Doc. 1.) Plaintiff filed his opening brief ("Plaintiff's Motion") on November 30, 2016, (Doc. 19), Defendant filed their opposition on February 15, 2017, (Doc. 24), and Plaintiff filed his reply in support of Plaintiff's Motion on February 28, 2017, (Doc. 25). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.[1]

For the reasons provided herein, the Court DENIES Plaintiff's Motion, (Doc. 19), AFFIRMS the final decision of the Commissioner, and DISMISSES this case.

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7–8, 10.)

# I. BACKGROUND

The following includes the pertinent medical and procedural background for this matter. Plaintiff was born on July 21, 1962, and is currently 55 years old. (Administrative Record ("AR") 159.) Plaintiff was a maintenance technician between 1995 and 2012. (AR 66.)

On August 14, 2012, Plaintiff filed his claim for disability insurance benefits. (AR 159–60.) In this claim, Plaintiff alleges that he became disabled on January 6, 2012. (AR 159.) Plaintiff stated that the following conditions limit his ability to work: rheumatoid arthritis, gout, and degenerative disc disease. (AR 59.)

On November 25, 2012, Dr. Fariba Vesali examined Plaintiff. (AR 277.) As to Plaintiff's daily activities, Dr. Vesali stated in his report that Plaintiff "drives a car" and occasionally "does the grocery shopping," "dishes," and "laundry." (AR 277.) Dr. Vesali observed that Plaintiff "is not in acute distress," "did not have any difficulties . . . tak[ing] off his shoes, put[ting] them on, and get[ting] on and off the exam table," and "pick[ed] up a paper clip from the table with each hand with no difficulties." (AR 278.) Dr. Vesali further noted in his report that Plaintiff had full "grip strength," "[n]ormal muscle bulk and tone," normal sensory exam results, and no inflammation in bilateral upper or lower extremities. (AR 278–79.) Dr. Vesali ultimately opined that Plaintiff "should be able to" (1) "walk, stand, and sit six hours in an eight-hour day with normal breaks," (2) "lift/carry 50 pounds occasionally and 25 pounds frequently," and (3) "do frequent postural activities and frequent manipulative activities." (AR 280.) Dr. Vesali also opined that Plaintiff has "no workplace environmental limitations," except that "[t]here is limitation to working in cold environments due to a history of rheumatoid arthritis." (AR 280.)

Dr. Daniel A. Watrous treated Plaintiff beginning in at least January 2012. (*See* AR 230–62, 281–95, 325–89.) Dr. Watrous' treatment notes state that Plaintiff sometimes had moderate symptoms, such as moderate tenderness in his hands, wrists, shoulders, and knees. (*See, e.g.*, AR 250, 256, 367, 377, 379.) However, Dr. Watrous' treatment notes generally state that Plaintiff had only mild symptoms. (*See* AR 230–62, 281–95, 325–81.) Dr. Watrous also stated in his January 30, 2013 treatment notes that Plaintiff was "[o]verall doing well," but his "joints are painful and stiff" if he "overdoes" activities "like washing care [sic] and doing manuel [sic] work." (AR 287.)

Dr. Watrous provided his opinion regarding Plaintiff's ability to do work-related activities in a medical source statement dated June 4, 2014. (AR 384–89.) In this opinion, Dr. Watrous opined that Plaintiff could only (1) sit, stand, or walk for thirty minutes at a time without interruption, (2) occasionally lift/carry up to ten pounds and never lift/carry more than ten pounds, (2) occasionally reach, handle, or push/pull and never finger, (3) never operate foot controls, (4) never climb ladders or scaffolds or balance, and only occasionally climb stairs and ramps, stoop, kneel, crouch, or crawl, and (5) never work at unprotected heights, move mechanical parts, in humid and wet conditions, in extreme temperature conditions, or with vibrations. (AR 384–89.)

The Social Security Administration denied Plaintiff's claim initially on December 14, 2012, (AR 93–96), and again on reconsideration on June 18, 2013, (AR 98–102). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on July 1, 2013. (AR 105–06.)

On June 10, 2014, the ALJ held a hearing regarding Plaintiff's claim (the "Hearing"). (*See* AR 29–58.) Plaintiff was represented by counsel at this Hearing. (*See* AR 29.) At the Hearing, Plaintiff testified that he can "cook and wash dishes" for "a short time," "do the laundry," and "go grocery shopping." (AR 42.) Plaintiff also testified that he had "11 years of education," but that he can only "read and write" at "[a]bout [a] fifth grade level." (AR 34.)

The ALJ called a vocational expert ("VE") to testify during the Hearing. (*See* AR 54–57.) The VE described Plaintiff's past work as a "maintenance repairer, building." (AR 54.) In response to hypotheticals provided by the ALJ, the VE testified that the hypothetical individual could not perform Plaintiff's past work as actually or generally performed in the national economy. (*See* AR 54–55.) However, the VE testified that the hypothetical individual could perform other jobs, including "cashier II" and "information clerk." (AR 55.)

In a decision dated August 5, 2014, the ALJ found that Plaintiff was not disabled. (AR 13–28.) The ALJ conducted the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520. (*See* AR 18–24.) At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since January 6, 2012, the alleged onset date." (AR 18.) At step two, the ALJ found that Plaintiff "has the following severe impairments: rheumatoid arthritis, gout, and degenerative disc disease of the lumbosacral spine." (AR 18.) At step three, the ALJ determined

that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (AR 18.)

The ALJ next found that Plaintiff has the residual functional capacity ("RFC") "to perform light work . . . except he can frequently finger and feel," "occasionally climb ramps or stairs," and "occasionally crawl and crouch." (AR 19.) The ALJ also found that Plaintiff can "never climb ladders, ropes, or scaffolds," and that he "must avoid workplace hazards, driving as a job task, and temperature extremes." (AR 19.) The ALJ also stated the following regarding the June 4, 2014 opinion provided by Dr. Watrous:

> [Dr. Watrous'] statement is inconsistent with Dr. Watrous' own progress notes documenting only mild symptoms. In addition, Dr. Watrous' opinion is inconsistent with the objective findings by Dr. Vesali who noted normal strength, no inflammation, normal sensation, and no observed difficulties or pain expression . . . . Moreover, Dr. Watrous' opinion is not consistent with [Plaintiff's] own admissions with regard to his hobbies, recreational activities, and household chores. [Plaintiff] is very active as he plays soccer, flies model helicopters, shops, drives, does the dishes and laundry, picks up after the dog, plays catch football with his kids, enjoys board games, cooks, visits parks, and visits family . . . . Considering the foregoing, the [ALJ] accords only limited weight to Dr. Watrous' opinion.

(AR 21.)

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." (AR 22.) Finally, the ALJ determined at step five that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 23.) Ultimately, the ALJ determined that Plaintiff "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (AR 24.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 11–12.) On January 15, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1–7.)

Plaintiff then filed the Complaint in this Court on March 16, 2016. (Doc. 1.) Plaintiff filed Plaintiff's Motion on November 30, 2016, (Doc. 19), Defendant filed their opposition on February 15, 2017, (Doc. 24), and Plaintiff filed his reply in support of Plaintiff's Motion on February 28,

4

2017, (Doc. 25). As such, the briefing in this case is complete and this matter is ready for disposition.

## II. LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt.

5

404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process"); *id.* § 416.920(a)(4) (same). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### III. DISCUSSION

Plaintiff argues that the ALJ erred (1) in according little weight to the opinion of a treating physician—Dr. Watrous, and (2) when determining whether Plaintiff can perform other jobs in the national economy at step five of the sequential evaluation process. (*See* Doc. 19 at 8–13.) The Court shall address each argument, in turn.

### A. The ALJ Did Not Err During the RFC Analysis

Plaintiff first argues that the ALJ erred when performing the RFC analysis by rejecting a portion of the opinion of a treating physician—Dr. Watrous. (*See* Doc. 19 at 10–13.) For the reasons that follow, the Court disagrees with Plaintiff's position.

#### 1. Overview of Analysis

"The ALJ determines a claimant's RFC before step four of the sequential evaluation analysis." *Colston v. Comm'r of Soc. Sec.*, Case No. 1:15-cv-01750-SKO, 2017 WL 784870, at *5 (E.D. Cal. Feb. 28, 2017) (citing 20 C.F.R. §§ 404.1520(e) & 416.920(e)). A claimant's RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* §§ 404.1545(a)(1) & 416.945(a)(1). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record . . . ." *Robbins*, 466 F.3d at 883. "The ALJ is entitled to formulate an RFC and resolve

7

any ambiguity or inconsistency in the medical evidence . . . ." *Jenkins v. Colvin*, Case No. 1:15-cv-01135-SKO, 2016 WL 4126707, at *6 (E.D. Cal. Aug. 2, 2016) (citing *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001)). Additionally, "[t]he ALJ can . . . decide what weight to give to what evidence as long as the ALJ's reasoning is free of legal error and is based on substantial evidence." *Tremayne v. Astrue*, No. CIV 08–2795 EFB, 2010 WL 1266850, at *12 (E.D. Cal. Mar. 29, 2010) (citing *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998)).

"In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick*, 157 F.3d at 725. Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

In this case, Plaintiff alleges—and the record reflects—that Dr. Watrous was Plaintiff's treating physician. (*See, e.g.*, AR 21.) "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If

there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination," (2) the "[n]ature and extent of the treatment relationship," (3) the "[s]upportability" of the opinion," (4) the "[c]onsistency" of the opinion "with the record as a whole," (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty," and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain

9

why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Finally, "[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'" *Orn*, 495 F.3d at 632–33 (quoting Social Security Ruling ("SSR") 96–2p). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.* (quoting SSR 96–2p).

### 2. Analysis Regarding Plaintiff's Treating Physician

In his June 4, 2014 opinion, Dr. Watrous opined that Plaintiff had numerous severe limitations, such as that Plaintiff could only (1) sit, stand, or walk for thirty minutes at a time without interruption, (2) occasionally lift/carry up to ten pounds and never lift/carry more than ten pounds, (2) occasionally reach, handle, or push/pull and never finger, (3) never operate foot controls, (4) never climb ladders or scaffolds or balance, and only occasionally climb stairs and ramps, stoop, kneel, crouch, or crawl, and (5) never work at unprotected heights, move mechanical parts, in humid and wet conditions, in extreme temperature conditions, or with vibrations. (AR 384–89.) This opinion was contradicted, in large part, by an examining physician—Dr. Vesali—who opined that Plaintiff could (1) "walk, stand, and sit [for] six hours in an eight-hour day," (2) "lift/carry 50 pounds occasionally and 25 pounds frequently," (3) perform "frequent postural activities and frequent manipulative activities," and (4) work in all workplace environments, with the exception of a "limitation to working in cold environments." (AR 280.)

As the opinion of Dr. Watrous is contradicted by the opinion of Dr. Vesali, the ALJ could only reject Dr. Watrous' opinion "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citation omitted). The ALJ accorded "limited weight" to Dr. Watrous' opinion because this opinion was "inconsistent" with (1) Dr. Watrous' "progress notes documenting only mild symptoms," (2) "the objective findings by Dr. Vesali," and (3) Plaintiff's "own admissions with regard to his hobbies, recreational activities, and household chores." (AR 21.)

The ALJ's first stated rationale—inconsistency with treatment notes—is an appropriate reason to reject Dr. Watrous' opinion. As noted by the ALJ, Dr. Watrous' treatment notes reflect that Plaintiff had generally mild symptoms—and *not* the symptoms one would expect based on the extreme limitations provided by Dr. Watrous in his June 4, 2014 opinion. (*See* AR 230–62, 281–95, 325–89.) This inconsistency between Dr. Watrous' treatment notes and his June 4, 2014 opinion is a valid specific and legitimate reason to reject this opinion. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[An] incongruity between [a physician's opinion] and [the physician's] medical records provides a[] . . . specific and legitimate reason for rejecting [the physician's] opinion of [the claimant's] limitations."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that inconsistencies between a treating physician's treatment notes and their opinion was an "adequate reason[] for not fully crediting" the physician's opinion); *Ortiz v. Astrue*, No. 1:11–cv–00064 SKO, 2012 WL 639508, at *10 (E.D. Cal. Feb. 24, 2012) (stating that "a contradiction between a treating physician's opinion and her treatment notes" constitutes a "specific and legitimate reason for rejecting the treating physician's opinion" (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009))).

Plaintiff nonetheless argues that this rationale was a deficient reason to discount Dr. Watrous' opinion because Dr. Watrous' treatment notes included occasional findings that Plaintiff had moderate symptoms. (*See* Doc. 19 at 11–12.) The Court is not persuaded by this argument. While Dr. Watrous' treatment notes did occasionally state that Plaintiff had some moderate symptoms, such as moderate tenderness and stiffness, (*see, e.g.*, AR 250, 256, 367, 377, 379), those statements are a far cry from the extreme limitations opined by Dr. Watrous in his June 4, 2014 opinion, (*see* AR 384–89). In other words, Dr. Watrous' treatment notes reflecting moderate symptoms are, themselves, inconsistent with Dr. Watrous' June 4, 2014 opinion.

Furthermore, to the extent there is any conflict in the medical evidence relating to Dr. Watrous' treatment notes—*i.e.*, mild or moderate symptoms—it is for the ALJ, and not this Court, to resolve that conflict. *See, e.g.*, *Andrews*, 53 F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational

11

interpretation." (citations omitted)); *Corn v. Astrue*, No. 1:11–cv–00888 AWI GSA, 2012 WL 2798802, at *13 (E.D. Cal. July 9, 2012) ("To the degree there are conflicts in the medical evidence, it is the ALJ's responsibility to resolve such conflicts." (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989))). Here, the ALJ reasonably resolved any potential conflict in Dr. Watrous' treatment notes by finding that Dr. Watrous documented "mild symptoms" in his treatment notes. (AR 21.) The Court will not disturb this finding. For these reasons, the Court finds that the ALJ's first stated rationale relating to an inconsistency between Dr. Watrous' treatment notes and his June 4, 2014 opinion is a valid specific and legitimate reason to reject this opinion.

The ALJ's second stated rationale for rejecting Dr. Watrous' opinion—inconsistency with the objective findings of Dr. Vesali—is also a valid reason to reject this opinion. Following an examination of Plaintiff, Dr. Vesali found that Plaintiff had full "grip strength," "[n]ormal muscle bulk and tone," normal sensory exam results, no inflammation in bilateral upper or lower extremities, and no observed difficulties taking "off his shoes, put[ting] them on, . . . get[ting] on and off the exam table," or picking "up a paper clip from the table with each hand." (AR 278–79.) Dr. Watrous, on the other hand, opined that Plaintiff had extreme limitations that are at odds with these objective findings. (*See* AR 384–89.) Additionally, Plaintiff has not referenced—and the Court is not otherwise aware of—any objective medical evidence that supports Dr. Watrous' opinion regarding Plaintiff's limitations. The inconsistency between Dr. Watrous' opinion and the unremarkable objective findings of Dr. Vesali is a valid specific and legitimate reason to discount Dr. Watrous' opinion. *See, e.g.*, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole, . . . or by objective medical findings." (citations omitted)); *Mitchell v. Astrue*, No. ED CV 09–1258–PLA, 2010 WL 1994695, at *4 (C.D. Cal. May 14, 2010) ("The inconsistency of [the physician's] opinion with the objective [test] results and the medical evidence as a whole was a legitimate reason supported by substantial evidence for the ALJ to discredit the doctor's opinion." (citing 20 C.F.R. § 404.1527(d)(4))).

The ALJ's final stated rationale for rejecting the opinion of Dr. Watrous—inconsistency with Plaintiff's activities—is similarly an appropriate specific and legitimate reason. Plaintiff stated that he drives, cooks, washes dishes, does the laundry, and goes grocery shopping. (AR 42 & 277.) Dr. Watrous' treatment notes on January 30, 2013 also state that Plaintiff was "[o]verall doing well," but his "joints are painful and stiff" if he "overdoes" activities "like washing care [sic] and doing manuel [sic] work." (AR 287.) The inconsistency between these activities of daily living and the severe limitations included in Dr. Watrous' opinion is an additional valid specific and legitimate reason to reject this physician's opinion. *See, e.g.*, *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (stating that a conflict between a physician's opinion and a claimant's daily activities "may justify rejecting a treating provider's opinion" (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999))); *Rollins*, 261 F.3d at 856 (finding that the ALJ gave specific and legitimate reasons for rejecting the opinion of a treating physician where "the restrictions" included in the opinion "appear[ed] to be inconsistent with the level of activity that [the claimant] engaged in").

In summary, the ALJ provided several valid specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Plaintiff's treating physician, Dr. Watrous. The Court therefore finds that the ALJ did not err in rejecting the opinion of this physician.

**B.     The ALJ Did Not Err at Step Five**

Plaintiff also argues that the ALJ erred at step five by relying on the VE's testimony that Plaintiff can perform other substantial gainful activity in the national economy because the requirements for the jobs cited by the VE conflict with Plaintiff's limitations.[2] (*See* Doc. 19 at 8–10.) The Court again disagrees with Plaintiff's position.

---

[2] In their opposition brief, Defendant argues that Plaintiff waived his step-five argument by failing to raise it at the Hearing. (*See* Doc. 24 at 13–14.) The Court agrees with Defendant's position.
  "[T]he Ninth Circuit has held that 'at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal' and courts 'will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice.'" *Ballestero v. Comm'r of Soc. Sec.*, Case No. 1:15-cv-01798-SKO, 2017 WL 714376, at *4 n.3 (E.D. Cal. Feb. 22, 2017) (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)). Here, Plaintiff was represented by counsel at the Hearing, yet Plaintiff failed to raise any argument during the Hearing regarding a conflict between the VE's testimony and Plaintiff's language level. As this argument was not preserved at the Hearing, it is waived on appeal before this Court. *See, e.g.*, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 n.3 (9th Cir. 2006) (declining to address the claimant's "argument that the ALJ erred in relying on the [VE's] testimony" where "it was not raised and preserved for appeal at the hearing" (citing *Meanel*,

"[I]f a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). At step five, "the ALJ . . . examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy." *Id.* "If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-Vocational Guidelines . . . ." *Id.* "If the Commissioner meets this burden, the claimant is not disabled and therefore not entitled to . . . benefits." *Id.* (citation omitted). "If the Commissioner cannot meet this burden, then the claimant is disabled and therefore entitled to . . . benefits." *Id.* (citation omitted).

In this case, the ALJ elected to use the first method at step five—the testimony of a VE. (*See, e.g.*, AR 23.) ALJs use VEs at disability hearings by calling the VE "to testify," then presenting the VE with "a series of hypothetical questions to 'set out all of the claimant's impairments' for the [VE's] consideration." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (quoting *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). "The [VE] is then called upon to translate [these] factual scenarios [into] realistic job market probabilities by testifying . . . to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs in the claimant's region or in several other regions of the economy to support a finding of not disabled." *Id.* (citation omitted).

---

172 F.3d at 1115)); *Xiong v. Colvin*, No. 1:13–cv–01161–JLT, 2014 WL 3735358, at *8 (E.D. Cal. July 28 2014) (finding that the claimant waived their right to raise an argument regarding the VE's "methodology" where they were represented by counsel at the administrative hearing, but "did not inquire as to" this issue at the hearing). Further, there is no indication in the record—and Plaintiff does not otherwise contest—that a finding of waiver does not present a risk of manifest injustice. Accordingly, the Court finds that Plaintiff's argument regarding step five of the sequential evaluation process is waived.

Nonetheless, the Court shall address the merits of Plaintiff's argument regarding step five. As discussed below, the Court also finds that this this argument lacks merit.

At the Hearing, the VE testified that Plaintiff could perform the jobs of "cashier II" and "information clerk." (AR 55.) These two jobs require language levels of 2 and 3, respectively. *See Cashier II*, Dictionary of Occupational Titles, 1991 WL 671840 (4th ed. 1991); *Information Clerk*, Dictionary of Occupational Titles, 1991 WL 672187 (4th ed. 1991).

Plaintiff testified during the Hearing that he had "11 years of education," but that he can only "read and write" at "[a]bout [a] fifth grade level." (AR 34.) Plaintiff argues that the language requirements of the jobs of cashier II and information clerk conflict with Plaintiff's self-assessed ability to read and write.[3] (*See* Doc. 19 at 10; Doc. 25 at 2–8.)

This argument lacks merit. "The regulations lay out the framework for considering someone's education as a vocational factor." *Leedy v. Colvin*, Civ. No. 6:16–cv–00062–MC, 2017 WL 436390, at *2 (D. Or. Feb. 1, 2017) (citing 20 C.F.R. § 416.964). As pertinent here, the regulations state that "the numerical grade level that [a claimant] completed in school may not represent [the claimant's] actual educational abilities," which "may be higher or lower." 20 C.F.R. § 416.964(b). The regulations further state that "if [the claimant] do[es] not have formal schooling, this does not necessarily mean that [the claimant is] uneducated or lack[s] abilities," such as "reasoning ability, communication skills, and arithmetical ability." *Id.* § 416.964(a). As such, "[p]ast work experience and the kinds of responsibilities [the claimant] had when [the claimant] w[as] working may show that [the claimant] ha[s] intellectual abilities, although [the claimant] may have little formal education." *Id.*

As noted by the ALJ in their decision, Plaintiff previously worked as a maintenance repairman. (AR 22.) This job has a language requirement of 3, *Maintenance Repairer, Building*, Dictionary of Occupational Titles, 1991 WL 687673 (4th ed. 1991)—*i.e.*, a higher language

---

[3] The predicate for Plaintiff's step-five argument is that the ALJ must resolve any conflicts between a VE's testimony and the Occupational Outlook Handbook (the "OOH"). (*See* Doc. 19 at 9–10.) In particular, Plaintiff argues that the jobs of cashier II and information clerk require "a high school education" under the OOH, and that Plaintiff cannot perform these jobs based on his testimony regarding his fifth-grade reading and writing levels. (*Id.*)

As discussed below, substantial evidence supports the ALJ's step-five determination based on the requirements of Plaintiff's prior work—regardless of Plaintiff's functional education level. The Court therefore need not resolve the issue of whether an ALJ must resolve conflicts between a claimant's language abilities and the requirements of jobs provided in the OOH. *Cf.* SSR 00-4p ("When there is an apparent unresolved conflict between VE . . . evidence and the [*Dictionary of Occupational Titles*], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.").

1 requirement than the job of cashier II, *see Cashier II*, Dictionary of Occupational Titles, 1991 WL 671840 (4th ed. 1991) (providing that the job of cashier II has a language requirement of 2), and the same language requirement as the job of information clerk, *see Information Clerk*, Dictionary of Occupational Titles, 1991 WL 672187 (4th ed. 1991) (stating that the job of information clerk has a language requirement of 3). Additionally, Plaintiff does not cite—and the Court is not otherwise aware of—any evidence in the record that Plaintiff can no longer meet the language requirement of his past relevant work as a maintenance repairer. (*Cf.* AR 175 (providing Plaintiff's statement that only physical conditions limit his ability to work).) Based on Plaintiff's past work, substantial evidence supports the ALJ's determination that Plaintiff could perform jobs with the same or lower language requirements than Plaintiff's previous employment. *See, e.g.*, *Forsberg v. Colvin*, No. EDCV 12–2247–AGR, 2014 WL 144613, at *6 (C.D. Cal. Jan. 14, 2014) (finding that "substantial evidence" supported the ALJ's step-five determination where, in pertinent part, the plaintiff's past work had requirements that exceeded those of the jobs referenced by the VE); *Davis v. Astrue*, Civil Action No. 5:11–cv–00408, 2012 WL 4018788, at *8 (S.D. W. Va. Sept. 12, 2012) ("[E]ven assuming [the plaintiff] has a marginal education level based simply on his grade level completion, the [VE's] testimony . . . that [the plaintiff] can perform the jobs identified . . . is supported by the record evidence of the mental demands of the . . . work previously performed [by the plaintiff]."). *See generally Tramaglino v. Comm'r of Soc. Sec.*, No. 2:15-cv-0374-KJN, 2016 WL 7742803, at *4 (E.D. Cal. Apr. 29, 2016) ("The relevant regulation makes it clear that a claimant's education level may be defined by actual ability and not necessarily by the numerical grade level he or she completed." (citing 20 C.F.R. § 416.964)).

Further, to the extent there is any conflict in the evidence regarding Plaintiff's language abilities—including between Plaintiff's testimony and his past work—it is for the ALJ, and not this Court, to resolve that conflict. *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("[Q]uestions of credibility and resolutions of conflict in the testimony are functions solely of the Secretary."

(citations omitted)).  Here, the ALJ resolved this potentially conflicting evidence by finding that Plaintiff could perform jobs with the same or lower language requirements as his past work.  (*See* AR 23.)  As this was a rational conclusion based on the record, the Court shall not disturb the ALJ's determination.  *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." (citing *Morgan*, 169 F.3d at 599)).

For these reasons, the Court finds that the ALJ did not err at step five of the sequential evaluation process.  Consequently, the Court finds that the ALJ's decision is properly affirmed.

## IV. CONCLUSION

For the reasons provided herein, the Court DENIES Plaintiff's Motion, (Doc. 19), AFFIRMS the final decision of the Commissioner, and DISMISSES this case.

IT IS SO ORDERED.

Dated:  **September 1, 2017**              /s/ *Sheila K. Oberto*
                                           UNITED STATES MAGISTRATE JUDGE